# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHAWN WILLIAMS | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. CIV-19-152-STE |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of the Social Security | ) |
| Administration,[1] | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Shawn Williams brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's (SSA) denial of disability benefits. The SSA Commissioner has answered and filed the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I.    PROCEDURAL BACKGROUND

Initially and on reconsideration, the SSA denied Plaintiff's application for benefits. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision.

---

[1] On June 17, 2019, Andrew M. Saul was sworn in as the Commissioner of Social Security and he is substituted as the proper Defendant. *See* Fed. R. Civ. P. 25(d).

(TR. 13-25). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (TR. 1-3).

## II.     THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 3, 2016, the application date. (TR. 15). At step two, the ALJ determined that Mr. Williams had the following severe impairments: diabetes mellitus; seizure disorder; residual of February 2016 comminuted fracture of left arm/shoulder; depression; anxiety; and borderline intellectual functioning. (TR. 16). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 16).

At step four, the ALJ concluded that Mr. Williams had no past relevant work, but retained the residual functional capacity (RFC) to:

> [P]erform medium work as defined in 20 CFR 404.1567(a) except he can is limited to no more than frequent reaching with the left upper extremity and no overhead reaching with the left upper extremity. He must avoid climbing ladders, ropes, and scaffolds and have no more than occasional exposure to hazards. Further, he is limited to simple, routine, repetitive tasks with no strict production requirements.

(TR. 19, 24). Based on the finding that Mr. Williams had no past relevant work, the ALJ proceeded to step five. There, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff

could perform. (TR. 50-51). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 51). The ALJ adopted the testimony of the VE and concluded that Mr. Williams was not disabled based on his ability to perform the identified jobs. (TR. 25).

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV. ISSUES PRESENTED

Mr. Williams alleges the ALJ erred: (1) in considering evidence from two licensed professional counselors and (2) at step five. (ECF No. 14:4-10).

## V. ERROR IN THE CONSIDERATION OF "OTHER SOURCE" EVIDENCE

Plaintiff alleges error in the evaluation of opinions from two licensed professional counselors—Rebecca Kroeker and Jeannette Redman. (ECF No. 14:4-8). According to Mr. Williams, the ALJ ignored significantly probative evidence offered by Ms. Kroeker and Ms. Redman without explanation. (ECF No. 14:4-8). The Court disagrees as to Ms. Kroeker's opinion, but agrees that the ALJ erred in evaluating evidence from Ms. Redman.

### A. ALJ's Duty to Consider Evidence from "Other Sources"

Tenth Circuit law and Social Security Ruling 06-3p state that the ALJ must consider evidence from "other sources," who do not qualify as "acceptable medical sources." *Blea v. Barnhart*, 466 F.3d 903, 914-15 (10th Cir. 2006); Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, at *4, *6 (SSR 06-3p).[2] "Medical sources who are 'not acceptable medical sources,' [include] … rehabilitation counselors … [and] professional … counselors." SSR 06-03-p, at *2, *4.

Opinions from these "non-medical sources" who have seen the claimant in an official capacity should be evaluated using the following factors: (1) the length and frequency of the treatment; (2) consistency of the opinion with other evidence; (3) the degree to which the source presents relevant evidence in support; (4) how well the source

---

[2] SSR 06-03p was rescinded effective March 27, 2017—but the regulation applies to claims, like Mr. Williams', which were filed before that date. *See* 82 Fed. Reg. 15263-01, 15263 (Mar. 27, 2017).

explains the opinion; (5) the level of the source's expertise; and (6) any other relevant factors. *Id.* at *5. In evaluating "other source" evidence, not every factor will apply in every case. *Id*. However, the ALJ should explain the weight given to the "other source," ensuring that the decision allows a reviewing party to follow the adjudicator's reasoning. *Id*. at *5-6.

### B. "Other Source" Evidence

The record contains evidence from two non-medical "other sources." On June 2, 2016, Ms. Kroeker wrote a letter which stated that Plaintiff was being seen for outpatient counseling at her agency. (TR. 395). In the letter, Ms. Kroeker stated that Plaintiff presented with anxiety, depression, and distorted thought processes and that he had cognitive impairments including learning problems and low IQ. (TR. 395).

The record also contains evidence from the Oklahoma Department of Rehabilitation Services (ODRS) where Mr. Williams was seen for vocational rehabilitation services. (TR. 404-469). As part of his treatment at ODRS, on October 28, 2016, Ms. Redman completed a report comprised of four parts: report which set forth: (1) "Determination," (2) "Disabilities," (3) "Impediment[s] to Employment," and (4) "Documentation." (TR. 444-446).

In the initial "Determination" Section, Mr. Williams was assessed into "Priority Group 1" with the following "Functional Limitations:"

- Communication—severe restriction;
- Interpersonal skills—severe restriction;
- Mobility;

- Self-direction;

- Work skills—severe restriction;

- Work tolerance;

- Requires extended period of time for vocational rehabilitation services; and

- Requires multiple vocational rehabilitation services.

(TR. 443, 444).

Next, the report listed Plaintiff's "Disabilities" as: Major Depressive Disorder, Borderline Intellectual Functioning, Adult Antisocial Behavior, and Insomnia. (TR. 444).

Third, the report stated Plaintiff's "Impediment[s] to Employment" were:

- Communication: Expressive (speaking clearly, writing ability—physical or mental capacity);

- Communication: Receptive (hearing, reading, attention span, processing information);

- Interpersonal Skills: Establish/maintain relationships/social interaction;

- Interpersonal Skills: Understand obvious social cues;

- Mobility: Transportation issues (public, driver's license);

- Self-Direction: Understand consequences of behavior;

- Self-Direction: Work independently/complete tasks/manage time;

- Work Skills: Achieve expected productivity/meet deadlines;

- Work Skills: Maintain concentration and attention;

- Work Skills: Reading, spelling, or math skills;

- Work Skills: Unable to begin and/or complete task without support;

- Work Tolerance: Miss work for medical treatment/problems; and

- Work Tolerance: Work for an 8-hour day.

(ECF No. 444-445).

Finally, in the "Documentation" section, the report provided a narrative regarding Mr. Williams' eligibility for services and outlined his specific needs. (TR. 445-446). This section stated that Plaintiff had:

- a full-scale IQ of 79 which confirmed his diagnosis of Borderline Intellectual Functioning and which affected his communication skills in the areas of mental capacity, attention span and the ability to process information;

- limited interpersonal skills which: (1) rendered him unable to understand obvious social cues and (2) resulted in difficulty with relationships due to poor boundaries and crossing over into socially unacceptable behaviors;

- limited work skills which: (1) rendered him unable to begin and complete tasks without support and (2) resulted in difficulty with reading, spelling, and math skills;

- limited self-direction due to his inability to understand the consequences of his behavior; and

- work tolerance limitations including the inability to work an 8-hour day due to insomnia, never working before in his life, and missing work for medical appointments.

(TR. 445-446). The narrative then stated that Plaintiff was "eligible in [Priority Group 1] as he needs multiple services over an extended period of time and has 3 severe limitations." (TR. 446).

Finally, Ms. Redman stated that Mr. Williams had "a disability that impede[d] employment[.]" (TR. 440).

7

### C. The ALJ's Consideration of the "Other Source" Evidence

In the decision, the ALJ stated:

> Although in June 2016, a licensed counselor reported that the claimant has experienced psychiatric disorders and learning disorder/low I.Q. since childhood, the evidence of record shows that he did not initiate ongoing outpatient psychiatric treatments until August 2016…. In October 2016, psychological testing as part of a vocational rehabilitation assessment yielded a Full Scale IQ score of 79, consistent with a diagnosis of borderline intellectual functioning.

(TR. 22, 23). Plaintiff alleges error in the ALJ's consideration of opinions from both Ms. Kroeker and Ms. Redman. (ECF No. 14:4-8). The Court agrees, but only with respect to Ms. Redman's opinions.

#### 1. Ms. Kroeker

Plaintiff alleges that the ALJ failed to: (1) assess his "distorted thought processes" as severe at step two based on Ms. Kroeker's opinion and (2) assess the impact of the "distorted thought processes" on [the] RFC. Neither argument is persuasive.

First, according to Plaintiff, the "distorted thought processes" were interwoven with his depression. *See* ECF No. 14:6 ("This is the chicken/egg analysis. It is the "distorted thought that is the chicken the egg is the depression."). Thus, the ALJ's finding of depression as a severe impairment at step two undermines Plaintiff's argument.

Second, the ALJ clearly discounted Ms. Kroeker's opinion based on the timing of her letter in relation to when Plaintiff began outpatient psychiatric treatments. (TR. 22). This discussion, albeit brief, was sufficient under SSR 06-3p for the Court to "follow the adjudicator's reasoning." SSR 06-3p at *5-6. That was all the ALJ was required to do. And because the ALJ discounted Ms. Kroeker's opinion, she was not required to thereafter

include any related limitations in the RFC. *See Miller v. Comm'r of Soc. Sec. Admin.*, No. CIV-16-919-M, 2017 WL 2389643, at *6 (W.D. Okla. May 3, 2017), *report and recommendation adopted sub nom. Miller v. Berryhill*, No. CIV-16-919-M, 2017 WL 2389716 (W.D. Okla. June 1, 2017) (noting that because "the ALJ properly rejected the treating physician's opinion regarding Plaintiff's functional limitations … the ALJ's failure to include RFC limitations based on that opinion is not reversible error.").

### 2. Ms. Redman

Plaintiff alleges that the ALJ: (1) failed to consider the "Functional Limitations" noted by Ms. Redman and her opinion that Plaintiff's disability "impede[d] employment" and (2) "never weighed the Redman opinion at all." (ECF No. 14:4-5). The Court agrees.

The only mention of Ms. Redman's opinion is the ALJ's statement that: "in October 2016, psychological testing as part of a vocational rehabilitation assessment yielded a Full Scale IQ score of 79, consistent with a diagnosis of borderline intellectual functioning." (TR. 22-23). But the ALJ made no reference to Ms. Redman's opinions regarding: (1) her belief that Plaintiff's disability impeded his employment or (2) Plaintiff's specific "Functional Limitations," which were further clarified in the "Impediment[s] to Employment," section of the report and the supporting narrative. *See* TR. 13-25.

### Ms. Redman's Statement that Plaintiff's Disability Impeded Employment

As alleged by Mr. Williams, the ALJ erred when she failed to comment on Ms. Redman's statement that Plaintiff's disability impeded his employment. The Court recognizes that this comment involved an issue reserved to the Commissioner, and

therefore, was not entitled to "any special significance." *See* SSR 96-5P, 1996 WL 374183, at *3 (July 2, 1996). Even so, "opinions from *any medical source* on issues reserved to the Commissioner must never be ignored." SSR 96-5P, 1996 WL 374183, at *3 (July 2, 1996) (emphasis added). Rather, "the ALJ must evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." *Lackey v. Barnhart*, 127 F. App'x 455, 457-458 (10th Cir. 2005). Here, the ALJ completely omitted any discussion of Ms. Redman's statement that Plaintiff's disability impeded employment. *See* TR. 13-25. Such inaction constitutes reversible error. *See Victory v. Barnhart*, 121 F. App'x 819, 825 (10th Cir. 2005) ALJ's failure to mention treating source's opinion on issue reserved to the Commissioner was "of course, clear legal error."

### Ms. Redman's Statements Regarding Plaintiff's Functional Limitations

The ALJ also erred in her evaluation of Plaintiff's functional limitations as opined by Ms. Redman.

As stated, the decision makes no reference to the "Functional Limitations" as outlined in Ms. Redman's opinion. *See supra*. The Commissioner's attempts to defend the omission by stating: "While Plaintiff argues this is an opinion as to functional limitations, such appears to be more of a description of vocational skills needing improvement, not necessarily functional limitations caused by medical impairments." (ECF No. 18:9). The Court disagrees. Read in its entirety, the report states that Plaintiff's "Disabilities," i.e. his "medical impairments" involve Major Depressive Disorder, Borderline Intellectual

10

Functioning, Adult Antisocial Behavior, and Insomnia. (TR. 444). And the narrative, which states that Mr. Williams "has 3 severe limitations" correlates with the first section of the report which, lists "Functional Limitations" as "severe" in the areas of Communication, Interpersonal Skills, and Work Skills. *See* TR. 444-446. These "severe" findings were further explained in the narrative when Ms. Redman stated Plaintiff had:

- a full-scale IQ of 79 which confirmed his diagnosis of Borderline Intellectual Functioning and which affected his communication skills in the areas of mental capacity, attention span and the ability to process information;

- limited interpersonal skills which: (1) rendered him unable to understand obvious social cues and (2) caused him to have difficulty with relationships due to poor boundaries and crossing over into socially unacceptable behaviors; and

- limited work skills which: (1) rendered him unable to begin and complete tasks without support and (1) caused him to have difficulty with reading, spelling, and math skills.

(TR. 445-446).

As stated, the ALJ did not specifically discuss these "Functional Limitations" in the decision. However, in discussing the evidence supporting the RFC, the ALJ stated:

> I have … incorporated the restriction to simple work in a low stress setting in recognition of [Plaintiff's] functional deficits due to mental impairment, including the psychiatric evaluation noting a borderline IQ score, [and] counseling records noting learning difficulties[.]

(TR. 23). The question then, is whether the ALJ's references to "functional deficits due to mental impairment" and "counseling records noting learning difficulties" constitute an adequate discussion of Ms. Redman's opinions. The Court answers this question negatively for two reasons.

11

First, the lack of express analysis could be excused if the RFC was consistent with Ms. Redman's opinion. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("in this case none of the record medical evidence conflicts with the ALJ's conclusion that claimant can perform light work, . . . [thus] the need for express analysis is weakened."). But the RFC for "simple work in a low stress setting" does not account for Plaintiff's severe limitations in the areas of communication (attention span and the ability to process information); interpersonal skills (inability to understand obvious social cues and difficulty with relationships); and work skills (inability to begin and complete tasks without support). *See, e.g., Bowers v. Astrue*, 271 F. App'x 731, 733 (10th Cir. 2008) (hypothetical for "simple work that was low in stress" did not sufficiently account for opinion that claimant was "seriously impaired in her ability to … pay attention).

Second, the ALJ recognized Ms. Redman's "Full Scale IQ score of 79, consistent with a diagnosis of borderline intellectual functioning" which is arguably consistent with the ALJ's statement regarding Plaintiff's "borderline IQ score, [and] counseling records noting learning difficulties," but this explanation fails to account for the specific functional limitations outlined in Ms. Redman's report. Because of: (1) the ALJ's failure to discuss Ms. Redman's specific opinions regarding Plaintiff's functional limitations and (2) the vague explanation which failed to account for the entirety of the opinion, remand is warranted for a proper consideration of Ms. Redman's opinions in accordance with SSR 06-03p.

## VI. PLAINTIFF'S REMAINING ALLEGATION OF ERROR

Plaintiff also argues error at step five. (ECF No. 14:8-10). But at this point, any findings at step five would be premature pending the remand for reconsideration of Ms. Redman's opinions, as discussed. *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) ("We will not reach the remaining issues raised by claimant because they may be affected by the ALJ's resolution of this case on remand.").

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on October 4, 2019.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE